STOULIG, Judge.
This is a somewhat unusual case in that the plaintiff-employer, Alton Ochsner Medical Foundation, and its workmen’s compensation insurer, Argonaut Insurance Company, filed this suit to have the court determine whether compensation benefits are owed to the defendant-employee, Laura Falkins.[1] The employee filed a claim for disability benefits arising out of an accident which occurred on July 6, 1973 while acting in the course and scope of her employment. As a part of their suit, plaintiffs included a request for a medical examination in order to evaluate her claim of disability. Defendant refused to submit to the examination and was ordered to do so by the court. The employee filed a reconventional demand for compensation benefits, which was denied on a finding that plaintiffs were not liable. Defendant has appealed.
The chronology of her work history with Ochsner is significant in weighing the merits of her claim. The record establishes these facts:
On August 22, 1972 she was hired as an aide in the hospital’s dietary department.
On January 8, 1973, she was treated in the Ochsner emergency room for com *244 plaints of fainting and nausea. At the time defendant was in the early stages of pregnancy with her second child.
On May 4, 1973, the employee was seen in the emergency room at Oschner for complaints of low back pain. Her medical records reflect complaints of intermittent episodes of low back pain since the birth of her first child.
On May 30, 1973 defendant was treated in the emergency room with complaints of stomach pain due to her sixth month of pregnancy.
On June 11, 1973 she was treated for a headache. (We note here that medical treatment is rendered without charge to Ochsner employees.)
On July 6, 1973 defendant complained of a fall in the hospital kitchen, which allegedly occurred when she slipped in a puddle of water on the floor while carrying a tray of celery into the freezer. She was immediately examined by a resident physician in the emergency room and advised to go home for three days because of her advanced pregnant condition.
On July 11, 1973, Mrs. Falkins was examined by another resident physician at Ochsner and informed she could return to work. Because of her pregnancy, she immediately took a leave of absence, during which time she was paid $443.53 in sick leave and insurance disability payments.
On August 15, 1973, an examination by Dr. A. William Dunn, an orthopedist at Ochsner, revealed no neurological deficit, no bone or joint abnormality, no neuro-musculoskeletal cause for pain and no treatment was indicated.
On October 18, 1973, defendant returned to work after her second child was born and continued in her employment without incident for more than three months.
On February 8, 1974, she was treated in the Ochsner emergency room for complaints of backache and was instructed to take three days off. On February 11, she was reexamined and told she could return to work.
On March 22, 1974, she was either terminated or voluntarily left her employment after her attorney made a letter demand upon the employer for compensation benefits for the alleged disability sustained as a result of the July 6, 1973 fall.
 We need not chronicle the ensuing contacts between the litigants to illustrate the lack of connexity between the alleged accident and the subsequent complaints of disability. As will be noted from the summarized facts, the claimant first alleged she suffered a disability from the slip-and-fall accident more than seven months after it occurred. This lapse of time per se is not conclusive proof she did not suffer a disabling job-connected injury if competent evidence is adduced to prove the contrary. But in the case before us neither the lay nor the medical testimony establishes Laura Falkins suffered any disability as a result of her accident.
Several neighbors were called to testify that Mrs. Falkins had trouble bending, reaching, and lifting because of back complaints. There was no effort to relate the alleged impairment to the July incident by testimony that prior to the accident she could do all these things. In fact her medical record at Ochsner indicates she first began experiencing low back pain after the birth of her first child, which was long before the accident.
Defendant presented as her.medical expert her treating physician, Dr. Louis En-senat, a general surgeon, who was imprecise in describing her condition as disabling. This witness diagnosed the defendant’s condition as one of back spasms with limitation of motion, for which he treated her for a period of approximately seven months [2] with diathermy and prescribed *245 muscle relaxants, analgesics and a lumbo-sacral support. He prescribed this regimen of treatment without the benefit of x rays, the utilization of a myelogram or consultation with either a orthopedic or neurological specialist. Obviously the trial court was not impressed with this or other testimony adduced on behalf of the defendant in view of its finding that the employee failed to prove by a preponderance thereof that her subjective complaints of disability were caused by the accident of July 6, 1973.
In summary we likewise find no evidence of disability causally connected to a job-related injury and accordingly affirm the judgment of the trial court.

AFFIRMED.

. R.S. 23:1311.

. Defendant initially contacted Dr. Ensenat on March 14, 1974 at the suggestion of her attorney and was discharged on August 31, 1974 after receiving 00 diathermy treatments *245 and being fitted with a lumbosacral support on July 24. She returned on October 11, 1974 and was administered 14 more diathermy treatments and was discharged on October 31, 1974.